UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: | **JUDGE RICHARD L. SPEER** |
| Arthur Lee Maines | Case No. 12-3168 |
| Debtor(s) | (Related Case: 12-32611) |
| Elizabeth Jane Dodson | |
| Plaintiff(s) | |
| v. | |
| Arthur Lee Maines | |
| Defendant(s) | |

### DECISION AND ORDER

This cause comes before the Court on the Motion of the Plaintiff for Summary Judgment. (Doc. No. 16). The Plaintiff's Motion for Summary Judgment is brought in support of her action to have her claim against the Defendant determined to be a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(6). (Doc. No. 1). The Defendant filed a response to the Plaintiff's Motion, objecting to the relief sought by the Defendant. (Doc. No. 22). In support of their respective positions, each of the Parties submitted written arguments; as well, each of the Parties filed supporting documentation. The Court has now had the opportunity to review these materials and, based upon this review, the Court, for the reasons set forth below, finds that the Plaintiff's Motion for Summary Judgment should be Granted.

## FACTS

The Plaintiff in this case is Elizabeth Dodson. The Plaintiff is the daughter of the Defendant, Arthur Maines. (Hereinafter, the daughter, Ms. Dodson, will be referred to as the "Plaintiff," while the father, Mr. Maines, will be referred to as the "Defendant"). The familial dispute between these two Parties stems from the Plaintiff's occupancy of a home owned by the Defendant.

In 2002, the Defendant and his wife purchased a single family residence. This purchase was done for the benefit of the Plaintiff. The Defendant financed the purchase of the residence, at least in part, through the use of mortgaged-based financing. After the purchase, the Plaintiff and her children moved into the residence.

As a part of their arrangement, the Plaintiff began to pay to the Defendant, on a monthly basis, the costs associated with the mortgage; as well, the Plaintiff paid to the Defendant other costs associated with the property such as taxes, insurance and utilities. At some later date, the Plaintiff stopped using the Defendant as a conduit, and began paying these obligations directly. The Plaintiff also used her own funds to make some improvements to the property.

In 2006, the property owned by the Defendant, but occupied by the Plaintiff, was severely damaged in a fire. At the time of the fire, the Defendant, together with the mortgage holder, were listed as the loss payees on the property's insurance policy. Based on this, the Defendant received funds for the loss of his property. After satisfying the mortgage obligation, the amount personally received by the Defendant in settlement of the insurance claim was $71,423.10.

Thereafter, the Defendant used these funds to rebuild a new home at the same location. However, instead of allowing the Plaintiff to reside at the rebuilt property, as had been the Parties' previous arrangement, the Defendant and his wife moved into the property. As a result of this action, the Plaintiff brought suit against the Defendant in state court.

In the state litigation, the trial court found for the Plaintiff. In finding for the Plaintiff, the state court made these findings:

> There was no written agreement between plaintiff and her parents; however, they orally agreed that plaintiff would pay all necessary expenses for purchase of the house, and would pay all mortgage payments, taxes, insurance, utilities, maintenance, and any other expenses of the house. Defendant and his wife agreed that plaintiff should treat the house as her own; that defendant and his wife would have no liability or obligation with regard to the house; that plaintiff would do nothing that would impair or damage defendant's credit rating; and that as soon as possible plaintiff would refinance the mortgage in her name and become the owner of the house.

(Doc. No. 22, Ex. A). Based upon this determination, the trial court found that the Defendant had been unjustly enriched in the sum of $87,514.17. *Id.*

In addition, the trial court determined that there "was no justification whatsoever for defendant's action in this case; and the Court can therefore only conclude that he acted out of malice and/or in bad faith." *Id.* As a result of this conclusion, the trial court awarded the Plaintiff punitive damages in the amount of $1,000.00 and attorney fees in the amount of $17,194.58. *Id.* Overall, a judgment was entered in the Plaintiff's favor for the sum of $105,708.75. *Id.* The Defendant appealed this judgment.

On appeal, the appellate court upheld the trial court's determination that the Plaintiff was, on the basis of the Defendant's unjust enrichment, entitled to award of damages in the amount of $87,514.17.[1] (Doc. No. 22, Ex. B). The appellate court also upheld the trial court's award of attorney fees. For this determination, the court found that the Defendant "was vengeful in his decision to keep the excess insurance proceeds and [the Plaintiff's] expenditures for the new home." *Id.* Based upon this determination, the appellate court stated that "we find that the trial court's finding of bad faith, i.e., that [the Defendant] acted with a dishonest purpose, moral obliquity, and/or conscious

---

[1] This decision is electronically available at: *Dodson v. Maines*, Slip Copy, 2012 WL 2061608 Ohio App. 6th Dist. (2012).

Page 3

wrongdoing . . . was supported by competent, credible evidence and within the manifest weight of the evidence." *Id.* (internal punctuation and citation omitted).

On the issue of punitive damages, however, the appellate court overturned the decision of the trial court for the reason that the judgment entered in the Plaintiff's favor was predicated on the theory of unjust enrichment, and thus did not include the requisite finding that an intentional tort had been committed by the Defendant. *Id.* For this determination, the appellate court noted: "Under Ohio law, the general rule is that punitive damages may only be recovered in actions involving intentional torts." *Id.* at pg. 18. Thereafter, the judgment of the trial court, minus the $1,000.00 award of punitive damages, was perfected as a lien against the Defendant's property.

On June 5, 2012, the Defendant filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. In response, the Plaintiff commenced the action now before the Court, seeking a determination that the claim she holds against the Defendant is a nondischargeable debt. In support of her action, the Plaintiff then filed her Motion for Summary Judgment.

## DISCUSSION

Before this Court is the Plaintiff's Complaint to determine the dischargeability of a particular debt. A proceedings brought to determine the dischargeability of a particular debt is deemed to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Accordingly, as a core proceeding, this Court has the jurisdictional authority to enter final orders and judgments in this matter. *Id.*; 28 U.S.C. § 1334.

The Plaintiff's complaint to determine dischargeability is brought pursuant to § 523(a)(6)[2] which provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

This provision, excepting from discharge any debt arising from a willful and malicious injury caused by the debtor, is one of the oldest known in American bankruptcy jurisprudence – being part of the original Bankruptcy Act of 1898 – and is aimed at the type of both socially and morally reprehensible conduct that is not deserving of the fresh-start policy which underlies the Bankruptcy Code. *Superior Metal Prods. v. Martin (In re Martin)*, 321 B.R. 437, 442 (Bankr. N.D.Ohio 2004).

In seeking to have her claim held nondischargeable under § 523(a)(6), the Plaintiff bears the ultimate burden of persuasion to establish, by at least a preponderance of the evidence, the provision's applicability. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). For this burden, the terms willful and malicious, while overlapping in many respects, are distinct concepts, with the Plaintiff needing to establish the existence of each to prevail on a claim of nondischargeability. *Knowles v. McGuckin (In re McGuckin)*, 418 B.R. 251, 254 (Bankr. N.D.Ohio 2009).

---

[2] In her Complaint, the Plaintiff also cited to § 523(a)(2)(A) as a basis for a finding of nondischargeabiliy. This provision generally excepts from discharge any debt arising as the result of a debtor's fraud. However, in her Motion for Summary Judgment, the Plaintiff did not address this provision. Accordingly, as the Court has not been presented with any supporting arguments, the Court will not address herein the applicability of § 523(a)(2)(A).

In her Motion for Summary Judgment, but not in her complaint, the Plaintiff also raised the applicability of § 523(a)(4) as a basis for a finding of nondischargeability. This provision generally excepts from discharge debts arising from acts such as embezzlement and larceny. However, since no amended complaint has been filed to add this provision as a claim, the Court will likewise not address herein the applicability of § 523(a)(4).

Elizabeth Jane Dodson v. Arthur Lee Maines
Case No. 12-3168

On her complaint to determine dischargeability, the Plaintiff filed a Motion for Summary Judgment. The standard for summary judgment is set forth in Rule 56(a) of the Federal Rules of Civil Procedure, as made applicable to this Court by Bankruptcy Rule 7056. Under Rule 56(a), it is provided that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

As the basis for her Motion for Summary Judgment, the Plaintiff invoked the doctrine of collateral estoppel. This doctrine provides that "[w]hen an issue of ultimate fact has been determined by a valid judgment, that issue cannot be again litigated between the same parties." BLACK'S LAW DICTIONARY 260 (6th ed. 1991). According to the Plaintiff, this doctrine applies, thereby precluding the Defendant from litigating in this Court the issue of whether he acted willfully and maliciously for purposes of § 523(a)(6), since that matter has already "been fully litigated and determined by a competent court." (Doc. No. 16, at pg. 4).

In addressing the doctrine of collateral estoppel in a dischargeability proceeding, this Court has explained:

> The doctrine of collateral estoppel, also known as "issue preclusion," is a common-law doctrine. It serves to promote judicial economy by preventing the same parties or their privies from re-litigating facts and issues in a subsequent suit that were fully litigated in a prior suit. Collateral estoppel principles apply to bankruptcy proceedings and can be used in nondischargeability actions to prevent the re-litigation of issues already decided in another forum such as a state court.
>
> When applying collateral estoppel principles from a state court judgment to a nondischargeability proceeding, however, the Supreme Court of the United States has held that the federal common law does not apply. Instead, bankruptcy courts, pursuant to the full faith and credit principles of 28 U.S.C. § 1738, must give the same issue preclusion effect to a state court judgment as it would be given under that state's law.

*Hoffman v. Anstead (In re Anstead)*, 436 B.R. 497, 501 (Bankr.N.D.Ohio 2010) (internal citations omitted). In accordance with this approach, Ohio law will be applied since the facts and issues

Page 6

Elizabeth Jane Dodson v. Arthur Lee Maines
Case No. 12-3168

sought to be precluded in this proceeding were previously subject to litigation in Ohio courts and involved the application of Ohio law.

Under Ohio law, a judgment will be afforded preclusive effect for purposes of the doctrine of collateral estoppel if the party moving for the application of the doctrine can establish the existence of these four elements:

> (1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;
>
> (2) The issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment;
>
> (3) The issue in the present suit must have been identical to the issue involved in the prior suit; and
>
> (4) The party against whom estoppel is sought was a party or in privity with a party to the prior action.

*Murray v. Wilcox (In re Wilcox)*, 229 B.R. 411, 415–16 (Bankr. N.D. Ohio 1998), citing *Cashelmara Villas Ltd. Partnership v. DiBenedetto*, 87 Ohio App.3d 809, 813–14, 623 N.E.2d 213 (1993). These elements of the collateral estoppel doctrine were not specifically cited by the Parties in their supporting arguments. However, it can be fairly surmised from the Parties' respective positions that only the third element of the collateral estoppel doctrine is in controversy: Whether the issue in the present suit was identical to the issue involved in the prior suit?

In the case of *Ed Schory & Sons, Inc. v. Francis (In re Francis)*, the Bankruptcy Appellate Panel for the Sixth Circuit addressed the third element of Ohio's collateral estoppel doctrine, explaining:

> If the same facts or evidence would sustain both, the two actions are considered the same within the rule that the judgment in the former is a bar to the subsequent action. If, however, the two actions rest upon different facts, or if different proofs would be required to sustain the two actions, a judgment in one is no bar to the maintenance of the other.

Page 7

Elizabeth Jane Dodson v. Arthur Lee Maines
Case No. 12-3168

*Ed Schory & Sons, Inc. v. Francis (In re Francis)*, 226 B.R. 385, 389 (6th Cir. B.A.P. 1998). Consistent with this statement, this Court has observed that, when assessing the applicability of the third element of the collateral estoppel doctrine, it is necessary to compare those factual findings made in the state-court proceeding and determine whether those findings would have been sufficient to sustain a decision that the defendant's conduct rose to the level to except the plaintiff's claim from discharge pursuant to the standard of § 523(a)(6). *Gonzalez v. Moffitt (In re Moffitt)*, 254 B.R. 389, 394 (Bankr. N.D.Ohio 2000).

In this matter, it is the position of the Plaintiff that the finding made by the state trial court, concerning the Defendant's "bad faith" conduct, may be equated in this Court with a finding that the Defendant acted both willfully and maliciously for purposes of § 523(a)(6). In taking a contrary position, the Defendant acknowledged the trial court's finding of bad faith, as well as the appellate court's determination that this finding of the trial court was supported by competent and credible evidence, thereby warranting an award of attorney fees. It is the position of the Defendant, however, that, as applied to § 523(a)(6), a finding of bad faith "is not the same as willful and malicious injury." (Doc. No. 22, at pg. 5). In support of his position, the Defendant relies on the decision rendered by the Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

In *Kawaauhau v. Geiger*, the Supreme Court addressed the meaning – specifically, the *mens rea* requirement – for the word "willful" as used in § 523(a)(6). In its decision, the Court first explained that the "word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." 523 U.S. at 61, 118 S.Ct. at 977. The Court then further stated: "the (a)(6) formulation triggers in the lawyer's mind the category intentional torts, as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend the consequences of an act, not simply the act itself." 523 U.S. at 61-62; 118 S.Ct. at 977 (internal quotations omitted).

As it regards the Court's decision in *Kawaauhau v. Geiger*, the Defendant seizes on the intentional tort aspect of § 523(a)(6). In doing so, the Defendant calls attention to the fact that, in the

Page 8

Parties' state-court litigation, the appellate court overturned the trial court's award of punitive damages reasoning that, because the judgment of the trial court was based on the theory of unjust enrichment, it did not include the requisite finding that the Defendant had committed an intentional tort. Thus, according to the Defendant, in the absence of a finding that he committed an intentional tort in the state-court action, the issues determined in the Parties' state-court litigation do not equate with a finding that, under the standard espoused in *Kawaauhau v. Geiger*, he acted willfully for purposes of § 523(a)(6).

On the position put forth by the Defendant, the Court does agree with this initial premise: a prior finding by another court that a debtor committed an intentional tort is an often used indicator showing that the debtor acted willfully as applied to § 523(a)(6). *See, e.g., Kleman v. Taylor (In re Taylor)*, 322 B.R. 306, 309 (Bankr. N.D.Ohio 2004) (debt nondischargeable under § 523(a)(6) based upon the intentional tort of assault and battery). At the same time, nothing in the Supreme Court's decision in *Kawaauhau v. Geiger* suggests that the existence of an intentional tort is the *sine qua non* for a determination that a debtor acted willfully for purposes of § 523(a)(6). Instead, the holding of *Kawaauhau v. Geiger* is more limited.

In *Kawaauhau v. Geiger*, the Court framed the question before it as this: "whether a debt arising from a medical malpractice judgment, attributable to negligent or reckless conduct, falls within this statutory exception." 523 U.S. at 59; 118 S.Ct. at 975. The Court answered this question in the negative, requiring that, to except a debt for discharge, it must be shown that the debtor acted with the specific intent to cause harm so that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." 523 U.S. at 64; 118 S.Ct. at 978. In this way, the Court's decision of *Kawaauhau v. Geiger* recognized that acts giving rise to the intentional tort of conversion, liability of which may rest upon a tortfeasor's general intent, are not necessarily exempt from discharge. *Id.*, citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934).

Elizabeth Jane Dodson v. Arthur Lee Maines
Case No. 12-3168

Looked at in this light, the issue of whether a debtor had previously been adjudicated liable for intentional tort, while relevant, is really secondary to any determination regarding the application of the collateral estoppel doctrine to a proceeding to determine dischargeability under § 523(a)(6). Instead, for purposes of *Kawaauhau v. Geiger* and the word "willful" as used in § 523(a)(6), the question is always whether, in the prior proceeding, a determination was made that the debtor specifically intended or was substantially certain that his or her actions would cause injury to another entity or to another entity's property. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 465 fn. 10 (6th Cir.1999). Such an inquiry is necessarily fact specific. For this purpose, these matters standing out to the Court.

First, in the prior matter, the Defendant was found to have acted in bad faith. While it is conceivable that a person may act in bad faith, but not intend to cause another harm, the trial court's finding of bad faith still lends itself strongly to the supposition that implicit in the trial court's findings was a determination that the Defendant specifically intended to cause harm to the Plaintiff. *See Stein v. McDowell (In re McDowell)*, 415 B.R. 601, 611 (Bankr. S.D.Fla.2008) ("'bad faith' alone does not meet the 'willful and malicious' standard."). In this regard, the appellate court set forth that bad faith is defined under Ohio law as "a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. (Doc. No. 22, Ex. B, at pg. 20). Most noticeably, the appellate court remarked that, for purpose of Ohio law, bad faith "also embraces *actual intent* to mislead or deceive another." *Id.* (emphasis added), *citing Kalain v. Smith*, 25 Ohio St.3d 157, 159 fn. 1, 495 N.E.2d 572 (1986).

The trial court's determination that the Plaintiff was entitled to damages for unjust enrichment also establishes that the Defendant had knowledge that he was retaining a benefit at the Plaintiff's expense. As set forth by the appellate court, a party can only recover for unjust enrichment if it is shown that a defendant had knowledge that a benefit was conferred upon him. *Id.* at pg. 7. From this, it becomes but a short step to conclude that implicit in the trial court's judgment was this finding: that the Defendant, by retaining the insurance proceeds received as the result of the fire to his property, necessarily had to know that he would cause injury to the Plaintiff by depriving her of

Page 10

the means by which to rebuild the home she was occupying pursuant to the Parties' arrangement. *See Hughes v. Arnold*, 347 Fed. Appx. 359 (9th Cir. 2009) ("the bankruptcy court properly gave preclusive effect to the state court order awarding attorney's fees because the issue of [debtor's] willfulness and maliciousness was squarely before the court when it determined whether her conduct was unreasonable, frivolous, meritless, or in bad faith . . .").

In the end, however, what particularly stands out to the Court is the appellate court's determination that the record compiled by the trial court supported a finding that the Defendant acted in a "vengeful" manner toward the Plaintiff. Under its ordinary meaning, vengeance means the "act or motive of punishing another in payment for an injury or wrong he or she has committed." Webster's II New Riverside University Dictionary 1280 (1984). Such a state of mind, of seeking to punish another, necessarily entails a specific intent to cause another injury, thereby rising to the level of culpability contemplated by the Supreme Court in *Kawaauhau v. Geiger* when addressing the term "willful" as used in § 523(a)(6). A vengeful state of mind would also qualify as a malicious act, with malice being defined, for purpose of § 523(a)(6), as "in conscious disregard of one's duties or without just cause or excuse." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986), citing *Tinker v. Colwell*, 193 U.S. 473, 486, 24 S.Ct. 505, 508, 48 L.Ed. 754 (1904).

For these reasons, the Court finds that, notwithstanding the fact that the Defendant was not adjudicated liable for an intentional tort, the cumulative scope of the findings made in the state-court matter supports a determination that the Defendant acted willfully and maliciously within the meaning of § 523(a)(6). Therefore, under the doctrine of collateral estoppel, the Defendant is precluded from defending against the Plaintiff's § 523(a)(6) action to determine dischargeability. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Elizabeth Jane Dodson v. Arthur Lee Maines
Case No. 12-3168

Accordingly, it is

***ORDERED*** that the Motion of the Plaintiff for Summary Judgment, be, and is hereby, GRANTED.

***IT IS FURTHER ORDERED*** that the claim held by the Plaintiff against the Defendant is hereby held to be a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(6).

Dated: February 5, 2013

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 12

# CERTIFICATE OF SERVICE

Copies were mailed this 5th day of February, 2013 to:

Elizabeth Jane Dodson
610 Vine Street
Clyde, OH 43410

John A Coble
4334 W. Central Avenue
Suite 226
Toledo, OH 43615

Arthur Lee Maines
412 S Main St
Clyde, OH 43410-2142

Deborah K Spychalski
PO Box 711
Toledo, OH 43697-0711

/s/ Melinda Hutton
Deputy Clerk, U.S. Bankruptcy Court